KOEHLER, Receiver, etc., v. BARIN, Register, and another.

(*Circuit Court, D. Oregon.* October 26, 1885.)

1. PUBLIC LANDS—JUDICIAL CONTROL OF OFFICIAL ACTION.

   As a means of controlling the official action of public officers, in a matter affecting private rights, the writ of injunction is the correlative of the writ of *mandamus;* and whenever in such case the latter will issue to compel affirmative action, the former may issue to restrain the same; but neither can be used to control or direct official judgment or discretion.

2. SAME—INJUNCTION, WHEN WILL NOT ISSUE TO RESTRAIN REGISTER AND RECEIVER.

   An injunction will not issue to restrain the register and receiver from receiving and allowing applications to enter certain lands within their district, although it may appear, in the judgment of the court, that the same belong to the plaintiff by legislative grant, so long as there is room for difference of opinion on the question, or its determination involves the exercise of official judgment.

Suit for Injunction.

*E. C. Bronaugh,* for plaintiff.

*James F. Watson* and *James K. Kelly,* for defendants.

DEADY, J. This suit is brought by the receiver of the Oregon & California Railway Company to have the defendants, the register and receiver of the land-office at Oregon City, perpetually enjoined from receiving any application to purchase or enter any tract or subdivision of a certain portion of the public land alleged to have been granted to the Oregan Central Railway Company by the act of May 4, 1870, or otherwise disposing of the same as land of the United States. The case was heard on a demurrer to the bill, for want of equity and for parties defendant.

By the act of May 4, 1870, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinnville, in the state of Oregon," it was provided as follows:

"Section 1. For the purpose of aiding in the construction of a railroad and telegraph line from Portland to Astoria, and from a suitable point of junction near Forest Grove to the Yamhill river, near McMinnville, in the state of Oregon, there is hereby granted to the Oregon Central Railroad Company, now engaged in constructing the said road, and to their successors and assigns * * * each alternate section of the public lands, not mineral, except coal or iron lands, designated by odd numbers, nearest to said road, to the amount of ten alternate sections per mile on each side thereof, not otherwise disposed of or reserved by valid pre-emption or homestead right at the time of the passage of this act. And in case the quantity of ten full sections per mile cannot be found on each side of said road within the said limits of twenty miles, other lands designated as aforesaid shall be selected under the direction of the secretary of the interior on either side of any part of said road, nearest to and not more than twenty-five miles from the track of said road, to make up said deficiency.

"Sec. 2. The commissioner of the general land-office shall cause the lands along the line of said railroad to be surveyed with all convenient speed. And whenever and as often as said company shall file with the secretary of the interior maps of the survey and location of twenty or more miles of said road,

the said secretary shall cause the said granted lands adjacent to and coterminous with such located sections of said road to be segregated from the public lands; and thereafter the remaining public lands subject to sale within the limits of said grant shall be disposed of only to actual settlers at double the minimum price for said lands.

"Sec. 3. Whenever and as often as the said company shall complete and equip twenty or more consecutive miles of the said railroad and telegraph, the secretary of the interior shall cause the same to be examined, at the expense of the company, by three commissioners appointed by him; and if they shall report that such completed section is a first-class railroad and telegraph, properly equipped and ready for use, he shall cause patents to be issued to the company for so much of the said granted lands as shall be adjacent to and coterminous with the said completed sections."

"Sec. 6. The said company shall file with the secretary of the interior its assent to this act within one year from the time of its passage; and the foregoing grant is upon condition that said company shall complete a section of 20 or more miles of said railroad and telegraph within two years, and the entire railroad and telegraph within six years from the same date."

By the act of January 31, 1885, entitled "An act to declare the forfeiture of certain lands granted to aid in the construction of a railroad in Oregon," it is provided as follows:

"Section 1. So much of the lands granted by an act of congress entitled 'An act granting land to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinnville, in the state of Oregon, approved May 4, 1870, as are adjacent to and coterminous with the uncompleted portions of said road, and not embraced within the limits of said grant for the completed portions of said road, be, and the same are hereby declared to be, forfeited to the United States and restored to the public domain, and made subject to disposal under the general land laws of the United States, as though said grant had never been made."

It appears from the bill that the Oregon Central Railway Company filed its assent to the act of May 4, 1870, within one year from the passage thereof, and completed a section of 20 miles of said road and telegraph within two years thereafter, and also completed 47¾ miles thereof, namely, from Portland to a point on the Yamhill river near McMinnville, within six years from the passage of said act, all of which was examined, and found properly equipped, as provided in section 3 of said act; that on January 19, 1885, the plaintiff was duly appointed by this court the receiver of the property of the Oregon & California Railway Company, and that prior to said appointment said last-named company had succeeded by said purchase to the right and property of said Oregon Central Railway Company in and to said completed portions of said road, and all its right and interest in all of said lands pertaining thereto, and is now the owner thereof; that nearly all of the lands within the 25-mile limit of the completed portions of said road have been surveyed; that prior to June 21, 1871, said Oregon Central Railway Company filed with the secretary of the interior a map of the survey and location of its road from Portland to McMinnville, and also from a junction near Forest Grove towards Astoria, in a north-westerly direction, for a distance of 20 miles, and prior to May 9, 1872, filed with said secretary a map of the survey and location of

the remainder of said road to Astoria, as shown on the exhibit filed therewith; that thereafter, and prior to May 10, 1872, the secretary of the interior segregated and withdrew from the public domain all the land granted to said company, including all of the odd sections on either side of the location of said road, and not more than 25 miles distant therefrom; that the completed portion of said road runs from Portland to Forest Grove in a westerly direction, and from the latter place to McMinnville in a southerly direction, the former part being by the line of the land survey about 17 miles in length, and the latter about 20 miles in length, and all the odd-numbered sections within 20 miles south of said former part are within the 20-mile limit east of the latter, so that by reason of such overlapping, if all such sections within said area were subjected to the terms of said grant, only one-half the quantity of land to which said company became entitled on the south and east side of the completed portions of said road would or could be obtained within the same; but the fact is that the whole of the odd-numbered sections within said area, together with such sections within an average distance of 10 miles west of said latter part of said road, are covered by a grant made prior to May 4, 1870, to the Oregon & California Company, to aid in the construction of a road from Portland to the southern boundary of the state on the east side of the Wallamet river.

It also appears that on July 8, 1885, the commissioner of the general land-office addressed a letter of instruction to the defendants, in which he construes said granting and forfeiting acts so as to deprive the Oregon & California Company of a large portion of the land which the plaintiff claims is embraced within the grant for the completed portions of the road. The letter of the commissioner, after quoting the act of 1885, proceeds as follows:

"A portion of the lands along and lying north of that portion of the constructed road between Portland and Forest Grove, and therefore 'embraced within the limits of said grant for the completed portions of said road,' are also 'adjacent to and coterminous with the uncompleted portions of said road' between Forest Grove and Astoria. The grant of so much as lies within conflicting limits applies equally to both portions of the definitely located line, thus limiting the volume of the grant for either portion of the road to the extent that the same land fell within the limits of the other portion. The question presented by this condition of the grant is whether the act of January 31, 1885, contemplated the forfeiture of the whole of the original grant of lands 'adjacent' to and coterminous with the uncompleted portions or said road irrespective' of so much as falls within twenty-mile limits of the constructed portion, or whether the act intended to reserve from forfeiture all the lands within the latter limits, irrespective of the portion that is adjacent to and coterminous with the uncompleted road. Considering the whole act, it appears to me that congress intended to reserve from forfeiture the lands within granted limits along the whole of the constructed portion of the road. For the present, therefore, the restoration of lands under the act of January 31, 1885, will be limited to the lines shown on the diagram, which is prepared in accordance with the foregoing views."

But this diagram, instead of reserving from forfeiture "the lands within granted limits along the whole of the constructed portion of the road," as provided in the letter, designates as forfeited all the granted land in the eight townships lying wholly or partly within the 20-mile limit on the west and south of the "constructed" or "completed" road, and constituting the south-west quadrant or fourth of a circle 40 miles in diameter, and having its center at Forrest Grove; and also all that in the five other townships lying just outside this quadrant and wholly or partly within the 25-mile limit.    This is done on the diagram by dividing the completed road into two lines or parts, forming nearly a right angle with each other, and treating the section between Portland and Forest Grove as one road, and that between the latter place and McMinnville as another, and reserving from forfeiture only the granted lands within the 20-mile limit on either side of said two sections of the completed road; and, as said road turns to the south at Forest Grove at nearly a right angle, the granted lands which lie within the 20-mile limit on the outside of this curve or angle and within the area of said quadrant, as well as those in the five-mile limit beyond, are treated as forfeited.

The plaintiff claims in his bill that by virtue of the premises the Oregon & California Company is now the owner of and entitled to patents for 611,200 acres of land within the said 25-mile limit along the line of said 47¾ miles of completed road, if there was so much subject to said grant within such area; and alleges that by reason of the overlapping of the prior grant to the Oregon & California Company on the south and west thereof, as well as the overlapping therein of the grant to the Oregon Central Company itself, not more than 345,600 acres of odd-numbered sections can be found in said limits, leaving a deficit of 265,600 acres, to which must be added a number of locations under the pre-emption and homestead laws made prior to the date of said grant; that lists of the greater portion of the lands adjacent to and coterminous with the completed road were long since filed with the register and receiver at Oregon City, and application made to the secretary of the interior for patents therefor, none of which have been issued; and that in the area constituting the quadrant aforesaid, extended to the 25-mile limit, there are in the odd-numbered sections 91,545.89 acres of land, of which 73,570.89 acres have been selected by the company, 66,921.89 acres of which are within the 20-mile limit.

At the passage of the act of 1885 congress had the power, under section 6 of the act of 1870, to forfeit the whole of this grant, because the road was not completed to Astoria as well as McMinnville within the time therein prescribed.    The grant was *in præsenti*, and vested in the grantee and its assigns the legal title to the odd-numbered sections for 20 miles on either side of the line of said road as fast as the company filed with the secretary of the interior a map and survey of 20 miles of the location of such line, subject to the condition that

the whole was constructed within six years. *Shulenberg* v. *Harriman,* 21 Wall. 44. But congress was not bound to do so unjust a thing as to forfeit the whole grant after the completion and acceptance of a considerable portion of the work. And, accordingly, we find that while the act declares that so much of the grant as is "adjacent to and coterminous with the uncompleted portions of the road" is forfeited, the effect of this language is carefully guarded and restrained by the counter clause, "and not embraced within the limits of said grant for the completed portions of said road."

The grant made by the act of 1870 was to one company for one road "from Portland to Astoria and McMinnville," as expressed in the title thereof. The junction was fixed near Forest Grove, and for a certain distance beyond that point the grant on the Astoria and McMinnville section necessarily overlapped. But the company could build either section first, and to that which was first completed the grant within the full prescribed limits would in justice apply and belong. There was no attempt on the part of congress in the act of 1870 to apportion the overlapping portion of this grant between the two sections of this road, although it was apparent that for some distance the space between them would vary from nothing to less than 40 miles. The grant was made without reference to this fact, and subject only to the penalty of forfeiture if the whole road was not completed within a given time. The road from Portland to McMinnville was completed in time, but the one to Astoria was not. And, unless congress was going to claim "the pound of flesh" in the forfeiting act, this state of things called for special legislation. Therefore, while it declared the granted lands forfeited along the line of the uncompleted portion of the road—the Astoria section—it qualified this declaration by saying, in effect, so far only as they are not embraced within the limits of the grant to the completed portion of the road,—the McMinnville section.

By this means the Astoria section, and the grant thereto for 20 miles beyond Forest Grove, are in effect eliminated from the problem, and the grant is saved to the completed road from Portland to McMinnville the same as if the former had never been mentioned. Therefore the land embraced in the odd-numbered sections within the limits of the quadrant aforesaid is, in my judgment, the property of the Oregon & California Railway Company, and not the public land of the United States. But so far as the lieu or indemnity lands in the second five-mile limit are concerned, the act only gave the grantee the right of "selection" to supply an ascertained deficiency in the grant within the 20-mile limit, and no right attaches to any such lands until the selection is made. *Ryan* v. *Railroad Co.,* 99 U. S. 382; *Grinnell* v. *Railroad Co.,* 103 U. S. 742; *Kansas Pac. R. Co.* v. *Atchison, etc., R. Co.,* 112 U. S. 414; S. C. 5 Sup. Ct. Rep. 208; *St. Paul, etc., R. Co.* v. *Winona, etc., R. Co.,* 112 U. S. 720; S. C. 5 Sup. Ct. Rep. 334.

In the first of these cases (*Ryan* v. *Railroad Co.*) the question arose under section 2 of the act of July 25, 1866, (14 St. 239,) granting land in aid of the California & Oregon Railway. The language of the grant, and the provision concerning the selection of lieu lands within the secondary limit, is in effect the same as in the act under consideration. Speaking for the court, Mr. Justice SWAYNE says:

"Under this statute, when the road was located and the maps were made the right of the company to the odd sections first named became *ipso facto* fixed and absolute. With respect to the 'lieu lands,' as they are called, the right was only a float, and attached to no specific tracts until the selection was actually made in the manner prescribed."

See, also, *St. Paul R. R.* v. *Winona, etc., R. Co., supra,* in which Mr. Justice MILLER in considering this subject says:

"It is true that in some cases the statute requires the land department to withdraw the lands within these secondary limits from market, and in others the officers do so voluntarily. This, however, is to give the company a reasonable time to ascertain their deficiencies and make their selections. It by no means implies a vested right in said company inconsistent with the right of the government to sell, or of any other company to select which has the same right of selection within those limits. Each company having this right of selection in such case, and, having no other right, is bound to exercise that right with reasonable diligence; and when it is exercised in accordance with the statute it becomes entitled to the land so selected. The unascertained float then becomes a vested right to an identified tract of land."

Assuming, then, that the legal title to the land in the odd-numbered sections in this quadrant is in the company, but as to those in the further five-mile limit it only has the right of selection for the purpose of making up the deficiency in the 20-mile limit, is the receiver entitled to the relief sought in this suit? As a means of controlling the action of public officers in a matter affecting private rights, the writ of injunction is considered the correlative of the writ of *mandamus;* and whenever, in such case, the latter will issue to compel affirmative official action the former may issue to restrain such action. *Gaines* v. *Thompson,* 7 Wall. 352; *Board, etc.,* v. *McComb,* 92 U. S. 541. In the leading case of *Kendall* v. *U. S.,* 12 Pet. 524, it was held that a *mandamus* would issue to compel the postmaster general to perform a mere ministerial duty in which the relator had an interest, and which did not involve the exercise of executive judgment or discretion on the part of that officer. In the later case of *Gaines* v. *Thompson,* 7 Wall. 347, which was a suit to enjoin the secretary of the interior and the commissioner of the general land-office from canceling an entry under which the plaintiff claimed an interest in certain lands, the subject was thoroughly and ably re-examined by Mr. Justice MILLER, and the conclusion reached "that an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions." And that "however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts after

the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts."

He also quotes with approval Mr. Chief Justice CHASE's definition of a ministerial duty in *Mississippi* v. *Johnson*, 4 Wall. 498, concerning which an officer may be directed or restrained by the courts: "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under circumstances admitted or proved to exist, and imposed by law."

Following this case the court, in *Litchfield* v. *Register*, 9 Wall. 575, refused to enjoin the defendants from receiving and acting on applications under the pre-emption law by settlers on certain lands within the district for which they were respectively the register and receiver. In delivering the opinion of the court, Mr. Justice MILLER said:

"The very first duty which the register is called on to perform when an application is made to him to enter a tract of land, is to ascertain whether it is subject to entry. This depends upon a variety of circumstances. Has there been a proclamation offering it for sale? Has it been reserved by any action of congress or of the proper department? Has it been granted by any act of congress, or has it been sold already? These are all questions for him to decide, and they require the exercise of judgment and discretion."

Notwithstanding my conclusion that this land belongs to the company under the acts of 1870 and 1885, and that its claim thereto will ultimately be maintained in the courts against any one who attempts to acquire the title to it under the pre-emption or other laws of the United States for the disposition of the public lands, still the matter is not so plain that there is no room for difference of opinion and the exercise of judgment in the premises on the part of the defendants, or those authorized to direct them in the discharge of their duties. For instance, it may be claimed with some show of reason that the grant was made to aid in the construction of a road from Portland to Astoria, and another from Forest Grove to McMinnville, and therefore the land in the quadrant aforesaid is no part of the grant to the latter, but is simply adjacent to and coterminous with the uncompleted portion of the former; or that on the face of the act of 1870, there being an overlapping grant for some 20 miles to the northwest of Forest Grove to the Astoria and McMinnville branches, or sections of a road from Portland to said last-mentioned places, the act should be construed so as to divide the grant between them, whereby the sections falling to the Astoria branch, being adjacent to and coterminous with the uncompleted portion thereof, are forfeited by the act of 1885.

It is not a sufficient answer to this that by far the more reasonable and just construction of the statutes is the one first indicated in

this opinion.  So long as there is fairly room for the exercise of their judgment in the premises, the action of the defendants cannot be constrained by the courts.

This conclusion makes it unnecessary to consider the objection of want of parties defendant to the bill.  In *Litchfield* v. *Register, supra,* it appeared that persons had already settled on the land in question under the pre-emption law, and were about to "prove up" thereon before the defendants.  The court held that these persons were necessary parties to the bill.  But in this case there is no allegation that any one has yet settled on the land or taken any steps to acquire an interest therein adversely to the company.

The demurrer to the bill must be sustained, and it is so ordered.