## PROSECUTION IN VILLAGES OF CITY OFFENDERS UNDER LIQUOR LAWS.

Common Pleas Court of Pickaway County.

WARD B. POWELL v. THE INCORPORATED VILLAGE OF ASHVILLE ET AL.

Decided, May, 1911.

*Liquor Selling in Dry Territory—Violations Occurring in a City—Prosecuted Before the Mayor of an Outlying Village—Fines Applied in Part to Payment of Detectives and Attorneys—Policy of the State as Revealed in Its Enactments—Validity of Ordinance—Motive—Injunction—Sections 4220, 4311, 4314 and 4316.*

1. It is within the discretion of the council of a village in a "dry" county to provide that a percentage of all fines and forfeited bonds thereafter paid into the village treasury by violators of the local option statute shall constitute a separate fund, to be known as the secret service fund and used in the employment of detectives and attorneys for the prosecution of violators of said law; and an allegation that the motive behind said ordinance is to enrich the village treasury by fines collected from violators of said law in a neighboring city does not state a ground that affects the validity of the ordinance nor does, it afford reason for complaint by a taxpayer.

2. The well established rule that injunction will not lie against criminal proceedings is applicable to proceedings brought before the mayor of a village against violators of the local option law in a neighboring city; and defendants in such actions must have resort to their remedy at law.

GOLDSBERRY, J.

The plaintiff, Ward B. Powell, alleges that he is a tax-payer of the village of Ashville, a municipal corporation in the county of Pickaway and state of Ohio, and that he brings this suit on behalf of said village, said village having no village solicitor.

He alleges that on the 16th day of August, 1910, said village duly passed an ordinance creating a secret service fund and known as Ordinance 152, which ordinance reads as follows:

"Sec. 1. Be it ordained by the council of the village of Ashville, Ohio, that forty per cent. of all moneys hereafter paid into

the treasury of said village, received from fines and forfeited bonds collected under any of the local option statutes of the state of Ohio shall constitute a separate fund to be called the secret service fund.

"Sec. 2. That such fund shall be used for hiring detectives or secret service officers to secure the enforcement of said local option laws.

"Sec. 3. This ordinance shall take effect and be in force on and after its passage and publication according to law."

Plaintiff further alleges that on or about the 18th day of January, 1911, said village council passed an ordinance, No. 155, to amend Section 2 of Ordinance 152, which ordinance reads as follows:

"That such fund shall be used for hiring detectives, secret service officers and to pay attorney fees, costs, etc., to secure the enforcement and prosecution of said local option laws."

Plaintiff further states that on the 18th day of January, 1911, said council passed Ordinance No. 156, entitled "An ordinance to employ counsel for prosecution of cases before the mayor of the village of Ashville for the violation of the local option laws," which ordinance is as follows:

"Be it ordained by the council of the village of Ashville, Ohio, that George G. Adkins, attorney at law, be employed to prosecute cases before the mayor of the village of Ashville for the violation of the local option laws. And that he be paid for said services 35 per cent. of the fines assessed and collected against them, on account of violation of the local option laws. Said per cent. of fines not to be paid said attorney, George G. Adkins, until the fines have been collected and paid into the corporate treasury of the village of Ashville, Ohio."

Plaintiff alleges that said ordinances were passed by said village council in pursuance of an agreement and confederacy by and between the council of said village and the mayor thereof; one E. E. Smith, for the purpose of employing detectives to secure evidence for alleged violation of the county local option law passed by the General Assembly of Ohio on the 5th of March, 1908, and especially any such alleged violations of said law by the citizens of Circleville in said county; that the purpose and

object of said ordinances were to induce, invite and encourage prosecutions to be commenced before said mayor of Ashville against the citizens of Circleville, in order that the said mayor might impose a fine against said citizens under said law, which should be collected and paid into the treasury of said village in order to enhance and enrich the treasury of said village with the moneys so collected from said fines, and also to enable the mayor and marshal of said village to charge and collect large amounts of costs from said prosecutions.

Plaintiff further alleges that under and in pursuance of said ordinances and said confederacy and agreement, it was and is the purpose of said village and said mayor to apply and appropriate a large percentage of said fines so collected, not exceeding 40 per cent. thereof, in the hiring of detectives to procure evidence of any alleged violations of said local option laws by the citizens of Circleville, and thus procure prosecution to be commenced against said citizens before said mayor with the purpose and assurances and intention that each and all of said citizens should be convicted by said mayor upon the sole evidence of said detectives and secret service officers so employed.

Plaintiff further avers that, under and in pursuance of said ordinances and said confederacy and agreement, it was and is the purpose and intention of said defendants, said incorporated village and said mayor, to use, apply and appropriate a further large percentage of said fines so collected, as aforesaid, not exceeding 35 per cent. thereof, in the payment of attorney fees to one George G. Adkins for his services in prosecuting said causes against said citizens of Circleville, as aforesaid.

Plaintiff further avers that in pursuance of said ordinance passed on the 16th day of August, 1910, and said confederacy and agreement, detectives were employed and sent to the said city of Circleville to procure evidence against the citizens thereof; and affidavits were filed with the marshal of said village, and before said mayor prosecutions were commenced against divers citizens of said city of Circleville, charging them with violating the county local option law; that such proceedings were had in said causes before said mayor; and upon the sole evidence given

by said detectives and secret service officers said citizens were convicted by said mayor and fined each in the sum of $150 and the costs of prosecution.

Plaintiff further says on the 20th of December, 1910, under the same agreement, by the same means employed, a large number of the citizens of the said city of Circleville were on the 15th day of February, 1911, found guilty by said mayor of violating said county local option law, and Friday, the 17th of February, 1911, was fixed as the time that said mayor should pass sentence upon them.

Plaintiff further alleges that on the 6th and 8th days of February a large number, to-wit, more than thirty affidavits were filed by defendant, Charles L. Nawman, before said mayor against a large number of citizens of said city of Circleville; prosecutions were thereby commenced against them for violations of said county local option law, in many instances charging them with a second violation of said local option law, and many of them charged with keeping places where intoxicating liquors were sold in violation of said local option law; and warrants have been served by the said defendant, Seymour Shook, as marshal of said village, upon many of said citizens, requiring them to appear forthwith before said mayor to answer said charges respectively.

Plaintiff further alleges that in pursuance of said ordinances and said confederation and agreement, as aforesaid, it is the purpose and intention of said mayor to convict each and all of said defendants upon the sole evidence of the defendant, Charles L. Nawman and one John Bostwick, who were the detectives and secret service officers so employed as aforesaid.

And plaintiff further avers that it is the purpose and intention of said mayor to assess heavy fines against all of said defendants so found guilty, as aforesaid, and to commit said defendants to imprisonment, unless said fines and costs accrued and accruing thereon are paid.

Plaintiff further alleges that it is the purpose of said mayor upon the collection of said fines, to pay same to the treasurer of said village. And it is the further purpose and intention of said mayor of said incorporated village to pay a portion of said 40

per cent. thereof to said detectives and secret service officers, or to reimburse the officers of the Anti-Saloon League for the payment of same. And it is also the purpose of said mayor and village to pay said George G. Adkins, their attorney, the sum of 35 per cent. of said fines so collected.

Plaintiff further avers that said ordinances, and each of them, are illegal and void, in contravention of the just policy of the state of Ohio; that the said several prosecutions so procured, commenced and carried on, as aforesaid, are in violation of the law of said state and of the just policy in the administration thereof, and that the collection of said fine in the manner and for the purpose, as aforesaid, is a violation of the law of said state and the just policy and the administration thereof.

Plaintiff further says that the payment of said sum of 40 per cent. or any part thereof, as provided for and authorized in said ordinance will be a misapplication of the funds of said corporation and an abuse of its corporate powers.

Plaintiff further says that the payment of said 35 per cent. of said fines, or any part thereof, as provided for and authorized in said ordinance to be paid to said attorney, George G. Adkins, for the purpose therein alleged, will be a misapplication of the funds of said corporation and an abuse of its corporate powers.

Plaintiff further alleges that the defendant, S. C. Allison, as treasurer of said village, has in his hands a large amount of money already collected from said fines imposed, as aforesaid; that he has been ordered and requested by said mayor of said village to pay and disburse said funds in the payment of said detectives and secret service officers and said attorney, George G. Adkins, for their services respectively, and that he will do so unless restrained by the order of this court, and that he will be ordered and required to pay out of said funds said percentages and disbursements to said detectives and secret service officers and said attorney for their services unless restrained by this court from doing so.

Plaintiff further alleges that said ordinances and said confederation and agreement so enacted and made as aforesaid, are in contravention of the laws of said state of Ohio, and that said

agreement and confederation between said mayor and said incorporated village and the said council and other corporate authorities is a contract which is in contravention of the laws of the said state of Ohio.

Plaintiff further alleges that said village of Ashville is ten miles from said city of Circleville; that all of said prosecutions aforesaid could have been commenced by the filing of affidavits before the mayor of said city of Circleville, or before a magistrate in said city, or before the probate court of said county, or by indictment in the court of common pleas of said county, and convictions had thereon if the evidence was found to be sufficient to authorize such conviction, all of which said defendants and each of them at all times well knew.

Plaintiff further says that he has no adequate remedy at law for the relief sought in this action and that his only adequate remedy is by interposition of this court to restrain the aforesaid wrongful acts and proceedings of said defendant hereinbefore alleged.

Plaintiff further says that there are other and further prosecutions pending before aforesaid mayor against divers and sundry citizens of the said city of Circleville whose names he is not able at this time to state, said prosecutions being for alleged violations of the local option law of the state of Ohio.

Wherefore plaintiff prays that the said incorporated village of Ashville and the said E. E. Smith as mayor of said incorporated village may be enjoined from enforcing or executing said ordinances and each of them; that the said E. E. Smith, as such mayor as aforesaid, may be enjoined from assessing or imposing said fines upon said Charles Carle, Albert Palm, Jerry Moore, Albert Lucas, James Brown, Denny Shelby, Charles Barthelmas, T. N. Caskey, Taylor McCrady, Albert Jackson, James Sullivan and William Hoffman or any of them and from any and all further proceedings in said causes; that said E. E. Smith, as mayor as aforesaid, may be enjoined from any and all further proceedings against said Albert Dodd, Elmer Dawson, Taylor McCrady, Simon Voll, Albert Palm, James Brown, T. N. Caskey, Albert Jackson, William Hoffman, Jerry Moore, Samuel Fullen,

Denny Shelby, W. E. Pickens, Charles Miller, Henry Blum, William H. Dotter, ——— Sampson, Meinhard Lane and in any and all other causes and prosecutions now pending before said mayor against said citizens of the city of Circleville for the alleged violation of the local option laws of the state of Ohio; that said Seymour Shook, as marshal of said village as aforesaid, may be enjoined from serving or executing any other or further warrants in his hands against said persons aforesaid, or any of them; that said S. C. Allison may be enjoined from paying or disbursing any moneys in his hands under and in pursuance of said ordinances or either of them; that said Charles L. Nawman may be enjoined from prosecuting said causes against said persons or any of them against whom he has filed said affidavits before said mayor as aforesaid; that said ordinances, and each of them, may be adjudged and decreed invalid and of no effect and that said incorporated village and the said council and other corporate officers of said village and said mayor may be enjoined from further carrying out and executing said agreement and confederacy so existing among them, and that until the final hearing of this cause the said defendants, and each of them, may be restrained from doing or performing any of said acts aforesaid and have such other and further relief as is equitable.

To this petition of the plaintiff the defendants have filed a general demurrer alleging that the petition does not state facts sufficient to constitute a cause of action.

It is provided by Section 4311 of the General Code:

"That the solicitor shall apply in the name of the corporation to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinance governing it, or which was procured by fraud or corruption."

Section 4314 of the General Code provides that:

"In case the solicitor fails upon the request of any tax-payer of the corporation to make any application provided for in the preceding three sections, such tax-payer may institute suit or pro-

ceeding for such purpose in his own name, on behalf of the corporation.   No such suit or proceeding shall be entertained by any court until the request shall have been first made in writing, nor until the tax-payer, upon motion of the solicitor or corporation counsel, shall have given security for the costs of the proceeding.''

Section 4316 of the code also provides:

''If the court hearing such case is satisfied that the tax-payer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity and justice of the case demand.   In such case the tax-payer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed as part of the costs a reasonable compensation for his attorney.''

The demurrer admits all facts, well pleaded, in the petition. The first question that we have to answer in this matter is: Has there been, or is there attempted to be, a misapplication of the funds of the incorporated village of Ashville or the abuse of its corporate powers or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing it or which was procured by fraud or corruption?

It is claimed that Ordinances Nos. 152, 155 and 156 passed by the council of the village of Ashville are invalid; that they were procured by an agreement or understanding between the said council and the mayor, the purpose of which agreement was to prosecute citizens of Circleville for violation of the local option law in order that they might enrich their village and procure and obtain costs for the mayor and marshal.   If these ordinances were duly passed and are authorized by the laws of the state of Ohio and not in conflict with the Constitution of the state of Ohio and are legal, it doesn't matter what the motive or the purpose of the mayor and the council were for the passing of said ordinances. · It often occurs that some of our best laws are passed through improper motive and effect a purpose which the legislator did not appreciate and foresee at the time of the passage of the same.

The petition alleges that the village council of said village duly passed an ordinance, referring to Ordinance 152 set forth in the petition. There is no allegation in the petition that the ordinances were not properly and regularly passed. Then the only question left to be decided is: Are the ordinances on their face invalid and illegal? Did the council of said village have a right to employ an attorney?

Section 4220 of the General Code provides:

"When it deems it necessary, the village council may provide legal counsel for the village, or any department or official thereof, for a period not to exceed two years, and provide compensation therefor."

And was said village authorized to employ detectives?
The General Code, Section 6139, provides that:

"The council of a city or village, by ordinance, may provide for the destruction of intoxicating liquor found to have been kept for illegal sale or distribution, or implements or vessels used for such illegal sale or distribution. Such council may use any part of the fines, collected for the violation of the local option law, for hiring detectives or secret service officers to secure the enforcement of such law, and may appropriate not more than one hundred dollars annually from the general revenue fund for enforcing the local option law when there are no funds available from such fines so collected."

There then can be no question as to the authority of the village to employ counsel and to hire detectives.

It is claimed that even though said villages had such authority that it is a misapplication of the funds of said village to provide 40 per cent. of the fines collected for detective service and 35 per cent. thereof as attorney fees.

In matters relating to local option it is provided by Section 13247 of the General Code, that:

"Fines and forfeited bonds collected under this subdivision of this chapter, except as provided in Section 13231, if enforced in the county court, shall be paid into the county treasury, and if enforced in municipal courts, shall be paid into the treasury of the municipal corporation in which the cause was tried. Such

funds paid into the treasury of the municipal corporation shall be applied as the council thereof may direct.''

As the law declares that the council may apply the fines collected under prosecutions of the local option law as they may direct, then it was perfectly right and proper for the council of Ashville to direct that 40 per cent. should be paid to detectives and 35 per cent. paid out as counsel fees, and the matter being left to their discretion this court has no right to interfere with the exercise of such discretion.

But, do said ordinances provide, as they now stand, for the payment of 40 per cent. for detective service and 35 per cent. for attorney fees?

Section 2 of Ordinances 152 says:

''That such fund shall be used for hiring detectives or secret service officers to secure the enforcement of said local option laws.''

But Ordinance No. 155, passed to amend said second section of said Ordinance No. 152, provides:

''That such fund shall be used for hiring detectives, secret service officers and to pay attorney fees, costs, etc., to secure the enforcement and prosecution of said local option laws.''

As said ordinances now stand said council can use but 40 per cent. of the fines collected for the payment of detectives, secret service officers and attorneys and as Ordinance No. 156 provides ''that 35 per cent. of the fines collected shall be paid to the attorney,'' then a sum, not to exceed 5 per cent., can be paid to detectives and secret service officers. But under Section 13247 of the General Code said council is authorized, if it so desired, to expend the whole of the fines collected by said village under said prosecutions, for services of detectives and attorneys, and the plaintiff as a tax-payer could not complain.

Plaintiff alleges in his petition that the purpose and object of said ordinances, which were passed in pursuance of an agreement and confederacy by and between the council of the village of Ashville and the mayor thereof, were to induce, invite and

encourage prosecution to be commenced before said mayor of Ashville against the citizens of Circleville, so that upon the conviction of the persons against whom such prosecutions should be commenced, the mayor of said village of Ashville should impose a fine against said citizens under said local option laws, which should be collected and paid into the treasury of said village, for the purpose of enhancing and enriching said treasury with the moneys so collected from said fines and for the further purpose of enabling the mayor and marshal of said village to charge and collect large amounts of costs from said prosecutions aforesaid.

It is difficult for the court to understand or appreciate in what way or manner the plaintiff could thus be damaged. Surely a resident of a village, a tax-payer residing in a village, is not damaged in person or property by the enrichment of the treasury of said village under such circumstances as alleged.

The plaintiff alleges that said ordinances and each of them are illegal and void and are in contravention of the just policy of the state of Ohio. This is but the statement of a legal conclusion and is not admitted by the demurrer. If the court is right in its conclusion said ordinances are fully authorized by the statutes of this state, and it is presumed that the Legislature of this state declares the policy of the state through its enactments.

"A municipal corporation being a political body, clothed with certain legislative and discretionary powers, equity is ordinarily averse to interfering by injunction with the exercise of those powers at the suit of a private citizen. And no principle of equity jurisprudence is better established than that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed. And the fact that the court would have exercised the discretion in a different manner will not warrant it in departing from the rule. Thus, a mere difference of opinion between a court of equity and a municipal corporation as to the proper rate of ferriage to be charged, where the corporation is by its charter vested with the control of certain ferries, and as incidental thereto the right of establishing a tariff of prices, will not justify the

court in granting an injunction. Nor will the discretion of the common council of a city in matters pertaining to their legislative functions be controlled by the writ of injunction.'' *High on Injunctions,* Volume 2, Section 1240.

''A court of equity will not control by injunction the exercise of discretion vested in corporate officers as to the disposition of corporate property and funds when there is no fraud.'' *22 Cyc.,* 876; *Bellaire Goblet Co.* v. *Findlay,* 5 C. C., 418; *22 Cyc.,* 880; *22 Cyc.,* 889; *3 So.,* 575; *Poyer* v. *Village of Des Plaines,* 123 Ill., 111.

But plaintiff's petition deals more largely with the wrong being done by the criminal prosecutions of the citizens of Circleville by the authorities of the village of Ashville, and in his prayer for relief the plaintiff prays that the mayor of the village of Ashville may be enjoined from assessing or imposing fines upon Charles Carle, Albert Palm, Jerry Moore, Albert Lucas, James Brown, Denny Shelby, Charles Barthelmas, T. N. Caskey, Taylor McCrady, Albert Jackson, James Sullivan and William Hoffman or any of them and from any and all further proceedings in said causes. That said mayor may be enjoined from any and all further proceedings against said Albert Dodd, Elmer Dawson, Taylor McCrady, Simon Voll, Albert Palm, James Brown, T. N. Caskey, Albert Jackson, William Hoffman, Jerry Moore, Samuel Fullen, Denny Shelby, W. E. Pickens, Charles Miller, Henry Blum, William H. Dotter, ———— Sampson and Meinhard Lane and in any and all other causes and prosecutions now pending before said mayor against said citizens of the city of Circleville, for the alleged violation of the local option laws of the state of Ohio. That said Seymour Shook as marshal of said village as aforesaid, may be enjoined from serving or executing any other or further warrants in his hands against said persons aforesaid or any of them, and that until the final hearing of this cause the said defendants, and each of them, may be restrained from doing or performing any of said acts aforesaid.

''Injunction will not issue to restrain criminal proceedings unless they are instituted by a party to a suit already pending before

the court, and for the purpose of trying the same right that is in issue there.'' *Crighton* v. *Dahmer,* 70 Miss., 602; *In re Sawyer,* 124 U. S., 200.

''Injunction will not lie to control or direct official judgment or discretion.'' *Koehler* v. *Barin,* 25 Fed., 161.

''When municipal ordinances have been enacted by the proper authority, proceedings on the part of municipal officers for their enforcement, as by suits, arrests, or fines, will not be enjoined merely because of the alleged illegality of the ordinances, or for the purpose of awaiting a determination of the question of their validity, when the person aggrieved may have a full and adequate remedy at law. A court of equity will not, therefore, interfere by injunction to restrain municipal officers from prosecuting suits against complainants, or from interfering with their business because of their violation of municipal ordinances which are alleged to be illegal, since the question of the validity of such ordinances does not properly pertain to a court of equity when complainants have a perfect remedy at law, if the ordinances are invalid, by an action to recover damages for the injury sustained.'' *High on Injunctions,* Volume 2, Section 1244.

''The general rule is that an injunction will not be granted to stay criminal or *quasi*-criminal proceedings, whether the prosecution be for the violation of the common law or the infraction of statutes or municipal ordinances.'' 1 O. N. P., 266.

''Under ordinary circumstances a person who is accused of violating either statutes or ordinances can not invoke the aid of equity for the purpose of staying or annulling the proceedings.'' *West* v. *Mayor, etc., of New York;* 10 Paige, 539; 57 Fed. Reporter, 276; 79 Ill., 500; 34 Wis., 497; *Arnold* v. *Village of Van Wert,* 3 O. C. C., 545; 4 N.P.(N.S.), 239; 7 N.P.(N.S.), 629; 6 N. P., 423.

If the prayer for relief in this case could be granted, then it could in every case of a person accused of a crime and the trial of offenders, in the constitutional mode prescribed by law, could forever be prohibited. A person threatened with arrest for any crime, upon the allegation of his innocence of the crime charged and of the irreparable mischief which would follow his arrest, could always draw the question of his guilt or innocence from trial in the proper forum.

There is no claim made in the petition that the mayor of Ashville had not full and complete jurisdiction to hear and determine the cases referred to, but plaintiff alleges that said mayor has, and will convict upon the sole evidence of the detectives and secret service officers in the employ of said village. This would be no ground for equitable relief to plaintiff because the parties so prosecuted and convicted would have a full, complete and adequate remedy at law. It is not for this court to say or dictate as to how much or how little or what kind or quality of evidence is necessary to warrant a conviction or an acquittal before the mayor of the village of Ashville. Said mayor having jurisdiction of the party and the subject-matter, is the sole judge of the amount and kind of evidence sufficient to authorize acquittal or conviction in his court.

The power to grant writs of injunction is one of the extraordinary powers of a court of equity and should be only exercised where the law, on account of its universality of application, is insufficient to afford a remedy. Equity only works where the law can not, but equity *follows* the law and does not *precede* it.

From the foregoing considerations the court concludes that the petition of plaintiff does not state facts sufficient to constitute a cause of action and therefore sustains defendants' demurrer thereto.